Nos. 2-09-0631, 2-09-0632, 2-09-0634, 2-09-0635, 2-09-0636, 2-09-0637, 2-09-0638, 2-09-0639, 2-09-0640, 2-09-0641, 2-09-0642, 2-09-0643, 2-09-0644, 2-09-0645, 2-09-0646, 2-09-0704 cons.          Filed: 6-22-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--284 |
| | ) | |
| CHARLES and PEGGY BENDOWSKI, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--285 |
| | ) | |
| ANTHONY KROLAK and JENNIFER SCHMIDT, | ) | |
| | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--286 |
| | ) | |

| | | |
|---|---|---|
| JAMES PIENIAZEK and PATRICIA PIENIAZEK, | ) ) ) | |
| Defendants-Appellants | ) ) | Honorable John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CH--287 |
| NORMAN and KAREN COOPER, | ) ) | |
| Defendants-Appellants | ) ) | Honorable John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 07--CH--288 |
| JEREMY and STACY HICKS, | ) ) | |
| Defendants-Appellants | ) ) | Honorable John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 07--CH--289 |
| U.S. BANK, | ) ) | |
| Defendants-Appellants | ) ) | Honorable John W. Countryman, |

| | | |
|---|---|---|
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--290 |
| | ) | |
| ZACHARY and JENNIFER SUNLEAF, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--291 |
| | ) | |
| DANIELE and DONNA PEPPONI, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--292 |
| | ) | |
| CHRISTOPHER and ASHLEY MORGAN, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

| | | |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |

|  |  |  |
|---|---|---|
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--293 |
| | ) | |
| DAMIEN and SARAH EFTEKHAR, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

|  |  |  |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--294 |
| | ) | |
| MICHAEL BLANKENSHIP, JACQUELIN BLANKENSHIP, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, | ) ) ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

|  |  |  |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--295 |
| | ) | |
| VASILES and EVELYN PANAGUOLEAS, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | John W. Countryman, |
| (Neumann Homes, Inc., Defendant). | ) | Judge, Presiding. |

---

|  |  |  |
|---|---|---|
| ACTION PLUMBING COMPANY, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07--CH--296 |

HARVEY and LUATH LAUER,   )
             )
 Defendants-Appellants   ) Honorable
             ) John W. Countryman,
(Neumann Homes, Inc., Defendant). ) Judge, Presiding.

_____

ACTION PLUMBING COMPANY, INC., ) Appeal from the Circuit Court
             ) of Kane County.
 Plaintiff-Appellee,    )
             )
v.           ) No. 07--CH--298
             )
WILLIE and SUSANNA DOOLITTLE, )
             )
 Defendants-Appellants   ) Honorable
             ) John W. Countryman,
(Neumann Homes, Inc., Defendant). ) Judge, Presiding.

_____

ACTION PLUMBING COMPANY, INC., ) Appeal from the Circuit Court
             ) of Kane County.
 Plaintiff-Appellee,    )
             )
v.           ) No. 07--CH--300
             )
PHILLIP and MARY AGRELLA,  )
             )
 Defendants-Appellants   ) Honorable
             ) John W. Countryman,
(Neumann Homes, Inc., Defendant). ) Judge, Presiding.

_____

ACTION PLUMBING COMPANY, INC., ) Appeal from the Circuit Court
             ) of Kane County.
 Plaintiff-Appellee,    )
             )
v.           ) No. 07--CH--299
             )
CAROLE A. McLAUGHLIN,   )
             )
 Defendants-Appellants   ) Honorable
             ) John W. Countryman,

(Neumann Homes, Inc., Defendant).        )    Judge, Presiding.

_____

JUSTICE SCHOSTOK delivered the opinion of the court:

This is a consolidated appeal from orders entered on June 9, 2009, following a bench trial, to foreclose mechanic's liens in 16 separate lawsuits filed by the plaintiff, Action Plumbing Company (Action). Action filed the suits to recover amounts owed to it for residential plumbing work from an allegedly bankrupt developer, Neumann Homes (Neumann). Before Action filed these suits, Neumann sold the subject properties to the defendant homeowners (collectively the Subsequent Purchasers). Each June 9, 2009, foreclosure decree included an amount for the attorney fees Action incurred in filing the liens and prosecuting these suits. On appeal, the Subsequent Purchasers argue that the trial court erred in including Action's attorney fees in the foreclosure decrees, on the ground that it violates section 17(b) of the Illinois Mechanics Lien Act (Lien Act) (770 ILCS 60/17(b) (West 2006)). We reverse and remand for additional proceedings.

Neumann was a residential home builder that developed the subject properties. Each property was in either the Walnut Woods or the Chatham Grove subdivision in Kane County. For each property, Neumann entered into a contract with Action to perform residential plumbing work. Neumann was the owner of the properties when it entered into the contracts with Action. The Subsequent Purchasers took title to their properties after Neumann had entered into the contracts with Action and, in most cases, before the liens were filed.

Action completed the plumbing work on each property. When Neumann failed to pay Action, Action recorded claims for liens in the office of the Kane County recorder of deeds in June, July, and October 2006, pursuant to the Lien Act (770 ILCS 60/0.01 et seq. (West 2006)). On February 7, 2007, Action filed 16 separate verified complaints to foreclose on its mechanic's liens

on the properties and sought attorney fees pursuant to section 17(b) of the Lien Act (770 ILCS 60/17(b) (West 2006)). The complaints named Neumann and the respective Subsequent Purchasers as defendants.

On September 27, 2007, Neumann and the Subsequent Purchasers (collectively the defendants) moved to dismiss Action's complaints pursuant to section 2--619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(9) (West 2006)) because the claims for liens did not strictly comply with the requirements of the Lien Act. Specifically, the defendants alleged that neither the lien claims nor the complaints to foreclose included a brief statement of the contracts at issue as required by sections 7 and 11 of the Lien Act (770 ILCS 60/7, 11(a)(i) (West 2006)). Thereafter, on November 1, 2007, Neumann filed a petition for relief under the United States Bankruptcy Code and the cases were automatically stayed. See 11 U.S.C. §362(a) (2006) (the filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor). On June 4, 2008, Action advised the trial court that it had obtained an order from the bankruptcy court lifting the automatic stay. The trial court then denied the defendants' motions to dismiss and ordered the defendants to answer the complaints.

Neumann did not answer any of the complaints and was defaulted. The Subsequent Purchasers (except for the Subsequent Purchaser in case No. 07--CH--299) answered the complaints and moved for partial summary judgment, asking the trial court to declare that the Subsequent Purchasers were not liable for Action's attorney fees. On January 29, 2009, the trial court entered an order stating that Action could not obtain personal judgments against the Subsequent Purchasers for attorney fees incurred by Action in filing its lien claims and prosecuting the foreclosure suits.

On June 1, 2009, a bench trial was held. The trial court granted Action a lien for each amount claimed, plus interest and costs. The trial court also stated that it would tax Neumann for Action's attorney fees. The trial judge specifically stated, "[w]hen I'm taxing attorneys' fees, I'm taxing them on Neumann Homes." The trial court then ordered that the attorney fees be included in the foreclosure decrees to be entered against the Subsequent Purchasers.

On June 9, 2009, the trial court entered a "Decree of Foreclosure of Mechanic's Lien and Sale of Property" for each of the 16 suits, nunc pro tunc to June 1, 2009. Each decree included, as the amount due to Action, the balance due on the contract, interest pursuant to section 1 of the Lien Act (770 ILCS 60/1 (West 2006)), and Action's attorney fees. Each decree stated that Action's attorney fees "are taxed as costs against Neumann." Furthermore, each decree stated that the "defendants, or some of them," shall pay to Action the amount due and ordered that in default of the defendants' payment of that amount "the Subject Property *** shall be sold at public auction *** pursuant to the usual proceedings for a judicial sale."

Prior to the entry of the decrees, the Subsequent Purchasers in each case, except case No. 07--CH--299, objected to the inclusion of attorney fees in the foreclosure decrees. On June 18, 2009, the Subsequent Purchaser in case No. 07--CH--299, who was not represented by counsel at trial, filed a motion for modification of judgment, asking the trial court to exclude Action's attorney fees. On June 25, 2009, the trial court denied that motion. Each of the Subsequent Purchasers filed a timely notice of appeal and a motion to stay enforcement of the trial court's June 9, 2009, foreclosure decree pending this appeal. On July 9, 2009, on this court's own motion, the appeals in these 16 cases were consolidated for review. On July 14, 2009, this court denied the Subsequent Purchasers' motions to stay enforcement of the foreclosure decrees.

On appeal, the Subsequent Purchasers argue that the trial court erred in including Action's attorney fees in the decrees of foreclosure. Alternatively, the Subsequent Purchasers argue that the trial court did not have a proper legal basis to tax Action's attorney fees against Neumann, because Neumann had defaulted in all the cases. Finally, Action requests in its appellee brief that we remand the case so that it may petition the trial court for its reasonable attorney fees incurred on appeal.

Section 17(b) of the Lien Act provides:

"If the court specifically finds that the owner who contracted to have the improvements made failed to pay any lien claimant the full contract price, including extras, without just cause or right, the court may tax that owner, but not any other party, the reasonable attorney's fees of the lien claimant who had perfected and proven his or her claim." 770 ILCS 60/17(b) (West 2006).

In the present case, it is undisputed that the owner that contracted to have the plumbing work done on each of the properties was Neumann. See 770 ILCS 60/1 (West 2006) (identifies the "owner" as the party who contracts with the contractor). With respect to the first argument on appeal, the question is whether, by including Action's attorney fees in the foreclosure decrees, the trial court "taxed" the Subsequent Purchasers with Action's attorney fees in violation of section 17(b) of the Lien Act.

The primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. County of Du Page v. Illinois Labor Relations Board, 231 Ill. 2d 593, 603-04 (2008). The best indicator of that intent is the language of the statute, which must be accorded its plain and ordinary meaning. County of Du Page, 231 Ill. 2d at 604. Words and phrases must be interpreted in light of other relevant provisions and the statute as a whole. County of Du Page, 231 Ill. 2d at

604. In addition to the language of the statute, courts may consider the purpose behind the law, "the evils sought to be remedied," and the consequences that would result from construing the law one way or the other. County of Du Page, 231 Ill. 2d at 604. If a statute is ambiguous, we may consider extrinsic aids such as legislative history. County of Du Page, 231 Ill. 2d at 604. A statute is ambiguous if it is susceptible to more than one reasonable interpretation. County of Du Page, 231 Ill. 2d at 604. Questions of statutory interpretation are reviewed de novo. County of Du Page, 231 Ill. 2d at 603.

Under the plain language of section 17(b) of the Lien Act, Action's attorney fees can be taxed only against Neumann, not the Subsequent Purchasers. In granting the Subsequent Purchasers' motions for partial summary judgment, the trial court recognized that it could not tax the Subsequent Purchasers with Action's attorney fees under section 17(b) of the Lien Act. Moreover, after trial, the trial court specifically stated that it was taxing Action's attorney fees on Neumann. However, by including Action's attorney fees in the foreclosure decrees, the trial court effectively taxed those attorney fees on the Subsequent Purchasers in violation of section 17(b) of the Lien Act. Neumann no longer had an interest in the properties and had defaulted in each case. As such, the foreclosure decrees placed the Subsequent Purchasers in a position where they had to either pay Action's attorney fees or have their homes subjected to judicial sale.

In determining that the Subsequent Purchasers were improperly taxed, we find Fair Play Development Organization v. Sarmach, 263 Ill. App. 593 (1931), instructive. In Fair Play, the Sarmachs contracted with Fair Play's predecessor in interest to perform labor and furnish materials for improvements to the Sarmachs' property. Fair Play, 263 Ill. App. at 595. The contract included an agreement for attorney fees in the event of default of payment. Fair Play, 263 Ill. App. at 600.

After the work was completed and the Sarmachs did not pay, Fair Play instituted a proceeding to foreclose on a mechanic's lien based on those improvements. Fair Play, 263 Ill. App. at 595. The Sarmachs, the Calumet City State Bank (Bank), as trustee, and unknown owners of certain trust deed notes were made defendants to the proceeding. Fair Play, 263 Ill. App. at 595. The Sarmachs did not appear and were defaulted. Fair Play, 263 Ill. App. at 595. Fair Play prevailed in its claim to foreclose. Fair Play, 263 Ill. App. at 595. The decree required "the said defendants, or some or other of them" to pay the entire sum due to Fair Play, including an amount for Fair Play's attorney fees. Fair Play, 263 Ill. App. at 599.

On appeal, the Bank argued, in part, that the decree erroneously included attorney fees. Fair Play, 263 Ill. App. at 597. The reviewing court noted that attorney fees were claimed to be due not under the Lien Act, but rather under the contract entered into between the owner and the contractor, to which contract the Bank was not a party. Fair Play, 263 Ill. App. at 600. The reviewing court further stated:

"The effect of the decree in this respect is to reduce the rights and obligations of the mortgagee to an equality with the owners of the fee as against the lien claimant, and places the bank in a position where it must either pay the lien claimant in full, or lose its rights entirely ***." Fair Play, 263 Ill. App. at 599.

Accordingly, the reviewing court held that it was error to require the Bank to pay the attorney fees and "to utilize the procedure of the mechanic's lien statute to facilitate the collection of [that] judgment." Fair Play, 263 Ill. App. at 600.

In the present case, as in Fair Play, the Subsequent Purchasers, who pursuant to section 17(b) of the Lien Act could not be taxed for Action's attorney fees, were in a position where they had to

either pay Action's attorney fees or lose their rights entirely. Similar to the foreclosure decree in <u>Fair Play</u>, the decrees here required that the "defendants, or some of them," pay the attorney fees or have the properties subjected to judicial sale. Although the trial court specifically indicated that it was taxing the attorney fees against Neumann, Neumann no longer had any interest in the properties. Therefore, Neumann was not in a position where it had to pay those fees to avoid any loss of interest. As such, adding the attorney fees to the lien claims violated section 17(b) of the Lien Act, which provides that attorney fees cannot be taxed against any party other than the owner--in this case, Neumann.

Although the statute is not ambiguous, and we need not consider extrinsic aids of construction, it is important to note that the legislative history supports our determination. Section 17(b) of the Lien Act was added by amendment in 1995. See 770 ILCS 60/17 (West 1996) (as amended by Pub. Act 89--253, eff. August 8, 1995). During discussions preceding the passage of the amendments in the House, Representative Cross made the following remarks describing the amendments:

> "[They] provide[] that when attorney's fees are awarded for the failure to pay a lien, *** they can only be issued and can only be ordered to be paid against the owner of the property, not any other subsequent purchasers of the property." 89th Ill. Gen. Assem., House Proceedings, May 24, 1995, at 325 (statements of Representative Cross).

Here, because Neumann no longer had any property interest in the subject homes and defaulted in these cases, the Subsequent Purchasers were effectively taxed with Action's attorney fees in violation of section 17(b). Action argues that the opposite determination is proper because the purpose of the

Lien Act is to protect the lien claimants. However, the foregoing legislative history indicates the intent of the legislature to also protect subsequent purchasers under certain circumstances.

Action argues that Kalina v. Steinmeyer, 103 Ill. App. 502 (1902), Kendall v. Fader, 99 Ill. App. 104 (1901), Mirar Development, Inc. v. Kroner, 308 Ill. App. 3d 483, 487 (1999), and Fair Play support the proposition that attorney fees should be included in the foreclosure decrees. However, Kalina was decided under section 18 of the 1895 Mechanics Lien Act, which specifically provided:

> "Sec. 18. The costs of proceedings as between all the parties to the suit, shall be taxed equitably against the losing parties. *** In all cases where liens are enforced, *** the court shall order a reasonable attorney's fee *** taxed as part of the costs, in favor of the claimant ***." Ill. Rev. Stat. 1895, ch. 82, par. 32.

Kalina, 103 Ill. App. at 505. Accordingly, under the version of the Lien Act at issue in Kalina, it was mandatory for the court to order that reasonable attorney fees be taxed as part of the costs against "the losing parties." If this version of the Lien Act were still in effect, the Subsequent Purchasers could be taxed the attorney fees as "losing parties." However, the Lien Act has been amended numerous times since then, and the version of the Lien Act applicable in this case does not allow Subsequent Purchasers to be so taxed. See 770 ILCS 60/17(b) (West 2006).

In Kendall, attorney fees were not included or secured by the lien, because the effective version of the Lien Act did not provide that attorney fees were part of the remedy. Kendall, 99 Ill. App. at 105-06. In Mirar Development, the reviewing court concluded that, although the Lien Act in effect at the time of the contract neither provided for nor prohibited an award of attorney fees, the parties' contract did so provide and, therefore, the trial court erred when it denied Mirar Development's request for attorney fees. Mirar Development, 308 Ill. App. 3d at 483. However, the

reviewing court in Mirar Development did not specifically state that the award of attorney fees should have been included in the foreclosure decree, and even if it had so stated, the defendant in that case was the owner, not a subsequent purchaser as in the present case. Accordingly, those cases do not support the proposition that Action's attorney fees must be secured by the liens.

Finally, Action cites Fair Play to support its argument that the trial court did not err in including the attorney fees in the foreclosure decrees. Action suggests that the attorney fees were excluded in Fair Play because the effective version of the Lien Act did not provide for attorney fees. Action further suggests that this holding supports the proposition that attorney fees should be secured by a mechanic's lien if the Lien Act provides for those fees. However, as explained above, Fair Play supports the opposite proposition. Action attempts to distinguish Fair Play on the grounds that Action's liens were superior to all other interests and that the attorney fees at issue in Fair Play were contractual, not statutory. Both of these are distinctions without a difference. In Fair Play, including the attorney fees as part of the foreclosure decree improperly taxed the wrong party. The defendant Bank in Fair Play could not be taxed with attorney fees, because the contract providing for the attorney fees was between the owner and the contractor. In the present case, including the attorney fees as part of the lien judgment improperly taxed the wrong parties, the Subsequent Purchasers, because section 17(b) specifically prohibits the taxing of fees against any party other than the owner (770 ILCS 60/17(b) (West 2006)).

Action also argues that the trial court clearly taxed the attorney fees against Neumann and that the question for review is how it is supposed to collect the taxed attorney fees--from the proceeds of sale or by execution of a personal judgment against Neumann. Action argues that the taxed attorney fees must come from the proceeds of sale because the Lien Act allows for a personal

-14-

judgment only where the proceeds of sale are insufficient to make a lien claimant whole. See 770 ILCS 60/19 (West 2006) (indicating that if the proceeds of sale result in a deficiency, the deficiency can be enforced personally against the defendant). Action cites cases such as Standard Bank & Trust Co. v. Callaghan, 215 Ill. App. 3d 76 (1991), Swords v. Risser, 55 Ill. App. 3d 676 (1977), and Beaudry v. Bell, 250 Ill. App. 468 (1928), for that proposition. However, these cases were all decided prior to the 1995 amendments to the Lien Act, which added sections 17(b) through 17(e). See 770 ILCS 60/17 (West 1996) (as amended by Pub. Act 89--253, eff. August 8, 1995).

Section 17 of the Lien Act does not provide a specific mechanism for the taxing of attorney fees; it neither prohibits nor provides that an attorney fee award be included as part of the lien judgment. It does specifically provide, however, that attorney fees may not be taxed against any party other than the owner. 770 ILCS 60/17(b) (West 2006). By including the attorney fees in the foreclosure decrees where the owner, Neumann, no longer had an interest in the properties and had defaulted, the trial court effectively taxed the Subsequent Purchasers for those attorney fees in violation of the Lien Act. The trial court may, however, enter a personal judgment against Neumann for those attorney fees without violating the statute.

That a personal judgment for attorney fees is not improper under the Lien Act is demonstrated by section 17(c) (770 ILCS 60/17(c) (West 2006)). Section 17(c) provides that if a lien claimant brings an action under the Lien Act without just cause or right and the lien necessarily fails, the trial court may award an owner his or her reasonable attorney fees for defending the action. 770 ILCS 60/17(c) (West 2006). Accordingly, the trial court may enter a personal judgment against a lien claimant for an owner's attorney fees even though, because the claim for lien failed, there has been no judicial sale and no deficiency.

Finally, Action argues that the attorney fees were part of the liens that attached when Action made its contracts with Neumann and that the Subsequent Purchasers purchased those properties subject to those fees. However, as stated, section 17 of the Lien Act does not specifically provide that the attorney fees must be included as part of the lien judgment. Additionally, section 1 of the Lien Act states that a contractor has a lien upon property "for the amount due to him or her for the material, fixtures, apparatus, machinery, services or labor, and interest at the rate of 10% per annum from the date the same is due." 770 ILCS 60/1 (West 2006). Section 1 does not mandate that the lien include an amount for reasonable attorney fees.

Accordingly, we reverse the determination of the trial court so far as it improperly taxed the Subsequent Purchasers for Action's attorney fees by including those fees in the foreclosure decrees. Based on this determination, we need not address the Subsequent Purchasers' alternate argument that the trial court had no legal basis to tax attorney fees on Neumann. Additionally, we note that in its appellee brief, Action argues that it is entitled to posttrial attorney fees and requests that we remand these cases to allow it to petition the trial court for the attorney fees it incurred after the trial court's June 1, 2009, order. Because we are remanding on the first issue, Action will have the opportunity to petition the trial court for posttrial attorney fees, which can be taxed against only Neumann.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed in part and the cause is remanded for additional proceedings consistent with this opinion.

Reversed in part and remanded.

ZENOFF, P.J., and BOWMAN, J., concur.